## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE PARACELSUS CORP.           §
SECURITIES LITIGATION            §      CIVIL ACTION NO. H-96-3464

### MEMORANDUM AND OPINION

In 1999, the named parties and certain nonparties in this securities class action entered into a stipulation of settlement.  The district court judge presiding over the case approved the proposed settlement and the plan to distribute the settlement fund.  The judge entered final judgment, retaining jurisdiction to enforce the administration of the settlement.

On December 14, 1999, the plaintiffs filed an Unopposed Motion for Entry of an Order Authorizing Distribution of Settlement Fund and Remaining Attorneys' Fees and Reimbursement of Expenses.  The district court judge entered an order on December 22, 1999 authorizing the distribution of the settlement fund, payment of the remaining attorneys' fees,  and reimbursement of out-of-pocket expenses.  The settlement funds were distributed according to the court's order.  That process took years.  The Garden City Group, the claims administrator retained by lead counsel for plaintiffs to process the class members' claims, sent checks, reissued lost checks, and tried to find claimants who were no longer at the addresses that had been provided.  At the end of this process, approximately 1,400 claimants had received and cashed settlement funds.  A $46,463.88 balance remained, consisting of uncashed and undeliverable checks and money set aside to pay taxes and interest.

In December 2005, plaintiffs' lead counsel moved for an order approving final disbursement and distribution of the remaining settlement funds.  Counsel asked that the Garden City Group be paid $15,916.32 for additional fees and expenses they had incurred in administering the settlement.  Counsel submitted an affidavit from the claims administrator with supporting documents showing that the small amounts that each of the eligible claimants who received and cashed their settlement checks would be allocated – approximately $33 per claimant – would not justify the time and expense necessary to distribute the remaining funds, particularly given the lapse of time and the likelihood that many of those claimants would have moved.  Class counsel asked the court to approve distribution of the remaining $30,547.06 to two designated charities, the Methodist Hospital Foundation and the Houston Volunteer Lawyers Program, invoking *cy pres*.  (Docket Entry No. 251).

Neither of the two designated charities was related to the class or its members. One charity was connected to the district judge, who promptly recused.  The case was then randomly reassigned and the motion for approval of the final disbursement and distribution set for a hearing.  At the hearing, this court ordered counsel to change the proposal to attempt to meet the requirements of the *cy pres* doctrine.  Counsel submitted an amended motion for disbursement of the remaining settlement funds.  (Docket Entry No. 262).

In the amended motion, counsel again asks this court to approve payment of the unbilled fees and expenses of the Garden City Group from the settlement fund.  Counsel also asks this court to approve the donation of the remaining settlement funds to the Institute for Law and Economic Policy, a research and educational foundation located in Philadelphia,

2

Pennsylvania.  Counsel for plaintiffs described the Institute for Law and Economic Policy's activities as including a number of symposia cosponsored by major law schools, bringing together academics, judges, and lawyers to examine legal issues relating to corporate governance and investors' rights.  This court has examined the agenda and list speakers for several of the Institute's recent symposia and found that it has some relationship to the class members.  No better recipient of the unclaimed funds has been identified.

Counsel for plaintiffs correctly point out that federal courts have approved the *cy pres* remedy in settling class actions if the proof of individual claims would be so burdensome or the distribution of damages so costly as to be economically impracticable.  At the same time, courts have recognized that *cy pres* has limits.  The purpose of *cy pres* distribution is to "put[ ] the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class."  2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10:17 (4th ed.2002).  The *cy pres* doctrine originated in the trust context, to respond to situations in which funds in a charitable trust could no longer be devoted to the purpose for which the trust was created.  Applied to the class action context, the doctrine, "or rather something parading under its name," *Mirfashihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004), serves a somewhat different purpose.  "In the class action context the reason for appealing to *cy pres* is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement (or the judgment, in the rare case in which a class action goes to trial) to the class members. There is no indirect benefit to the class from the defendant's giving the money to someone

3

else. In such a case the '*cy pres*' remedy (badly misnamed, but the alternative term – 'fluid recovery' – is no less misleading) is purely punitive." *Id.* at 784.

In this case, the amount of unclaimed funds in relation to the amount of distributed funds is not so large as to raise a fundamental question about the acceptability of the settlement. Nor is this a case in which the parties invoked *cy pres* without making diligent efforts to locate the class members who had not received or cashed settlement checks. *See Masters v. Whilhelmina Model Agency*, 22007 WL 28983 (2d Cir. Jan. 4, 2007) (rejecting a *cy pres* award because the district court had failed to consider whether it was feasible to distribute remaining funds to the class members). In this case, the evidence shows that it would be onerous or impossible to locate these class members and that it would be economically impracticable to allocate and distribute the remaining funds to the class members who had received and cashed the initial settlement checks. The record establishes that at this late date, it would not be feasible either to locate the class members who did not receive or cash the settlement checks when they were mailed or to allocate the undistributed amount to the individual class members who could be located years ago but whose present whereabouts may well be different.

As amended, the motion meets the stated purpose of *cy pres* distribution in the class action context. The unclaimed funds are to be distributed to the Institute of Law and Economic Policy, which will spend the money in a way that may indirectly and prospectively benefit the class members in the aggregate. Based on current law, the length of time that has elapsed since the settlement was approved, the difficulty in finding an alternative acceptable

4

use of the funds, and the effort made to find a recipient suitable under the *cy pres* doctrine,

this court grants the amended motion for approval of final disbursement and distribution of

the remaining settlement funds.

SIGNED on February 6, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

5